IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BARBARA C. ALLEN,                          CV 04-888-BR

        Plaintiff,                  OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

        Defendant.

LINDA ZISKIN
The Law Office of Linda Ziskin
4800 SW Meadows Road, Suite 300
Lake Oswego, Oregon 97035
(503) 534-3563

        Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1024

**LUCILLE G. MEIS**
Office of the General Counsel
**FRANCO L. BECIA**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2114

        Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Barbara Allen brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income payments (SSI) under Title XVI of the Social Security Act.

This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  The Court affirms the Commissioner's final decision.


## BACKGROUND

At the time of the Commissioner's final decision, Allen was 47 years old with a high-school education and training as a registered nurse.  Tr. 223.[1]  She worked in the past as a registered nurse, house cleaner, seamstress, and childcare worker.  Tr. 222, 461.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of record filed with the Commissioner's Answer.

On November 29, 1995, Allen injured her spine in a motor-vehicle accident.  Tr. 255, 262.  She has preexisting degenerative changes in the cervical and lumbosacral regions of the spine.  She had low-back surgery for a herniated disc in March 1997.

Allen alleged disability beginning November 30, 1995, due to degenerative disc disease in the cervical and lumbar spine with severe pain in the back, legs, hips, wrists, and knees; numbness and pain in the fingers and legs; and muscle spasms from the left buttocks to the toes.  Tr. 69-76.

After the administrative hearing, Allen reported she had received earnings from childcare, housekeeping, pet care, and sewing in 1996, 1997, 1998, and 1999.  Tr. 209-10.  Based on her updated report of earnings, Allen amended her alleged onset date to January 1, 1997.  Tr. 225, 399.

Allen filed her SSI application on December 4, 1997. Tr. 69.  SSI payments cannot be made retroactively. 20 C.F.R. §§ 416.203, 416.501.  *See also* Social Security Ruling (SSR) 83-20. Allen cannot receive SSI payments for any period before she filed her application regardless of her alleged onset date.


## DISABILITY ANALYSIS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the

meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).
*See also* 20 C.F.R. § 416.920. Allen disputes the ALJ's findings
in Steps Two, Three, and Five.

At Step Two, if the ALJ determines the claimant has no
"medically severe impairment or combination of impairments," the
claimant is not disabled. *Yuckert*, 482 U.S. at 140-41. *See also*
20 C.F.R. § 416.920(c).

At Step Three, if the ALJ determines the claimant's
impairments meet or equal "one of a number of listed impairments
that the [ALJ] acknowledges are so severe as to preclude
substantial gainful activity," the claimant is disabled.
*Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(d).
The criteria for these listed impairments, also called Listings,
are enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1
(Listing of Impairments).

To make a determination at Step Five, the ALJ must assess
the claimant's residual functional capacity (RFC). The
claimant's RFC is an assessment of the sustained, work-related
activities the claimant can still do on a regular and continuing
basis despite her limitations. 20 C.F.R. § 416.945(a). *See also*
SSR 96-8p.

At Step Five, the Commissioner must determine whether the
claimant is able to do any other work that exists in the national
economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R.

§ 416.920(e),(f).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Yuckert*, 482 U.S. at 141-42.  *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(f)(1).

## THE ALJ's FINDINGS

The ALJ found Allen's ability to perform basic work-related activities is limited by degenerative disc disease, depression, and headaches.  Tr. 20.  He found Allen's condition was not equivalent to the criteria for any presumptively disabling condition in the Listing of Impairments.  The ALJ assessed Allen's RFC as follows:

> She can perform simple, repetitive, and
> routine work with only occasional public
> contact.  She can lift and carry objects
> weighing up to 10 pounds occasionally and up
> to 5 pounds frequently.  She can only
> occasionally bend, stoop, crouch, crawl or
> climb stairs.  She can sit for ½ hour periods
> for up to a total of 6 hours in a normal
> workday.  She should not be exposed to
> workplace hazards, such as unprotected
> heights.

Tr. 24.

The ALJ determined Allen is capable of performing work in the national economy.  Tr. 25.  The ALJ relied on testimony from the vocational expert (VE), who opined a person of Allen's age,

education, work experience, and RFC could work as a hand packager and inspector, office helper, and small item or hardware polisher. *Id.* The ALJ concluded Allen is not disabled and, therefore, not eligible for SSI benefits. *Id.*

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Allen asserts the ALJ erred at Step Two when he failed to identify all of Allen's severe impairments and at Step Three when

he failed to find her impairments are equivalent to any impairments in the Listing. Allen also contends the ALJ erred when he failed to assess her RFC accurately and when he concluded at Step Five that Allen can perform work that exists in the national economy.

## I.   **Step Two**

Allen disputes the ALJ's finding at Step Two that Allen's severe impairments are limited to degenerative disc disease, depression, and headaches.

At Step Two, the ALJ can find the claimant does not have any severe impairments and deny the claim or find that claimant has severe impairments and proceed to Step Three. SSR 85-28. Here the ALJ found Allen has impairments that significantly limit her ability to perform basic work activities and that are, therefore, severe within the meaning of the Act. The ALJ then properly proceeded to Step Three.

Accordingly, the Court finds the ALJ did not err at Step Two.

## II.  **Step Three**

Plaintiff disputes the ALJ's finding "that her severe impairments do not either meet a listing, or, in combination, equal a listing."

A claimant must establish she meets or equals the criteria for a listed impairment based on medical evidence. *Sullivan v.*

*Zebley,* 493 U.S. 421, 431 (1990). *See also Tackett v. Apfel,* 180 F.3d at 1100; 20 C.F.R. § 416.926. The claimant's description of symptoms is insufficient alone to establish the presence of an impairment. 20 C.F.R. § 416.929(b). *See also* SSR 86-8.

Although Allen disputes the ALJ's finding that her impairments do not meet or equal an impairment in the Listing, Allen does not identify a specific impairment in the Listing that she purportedly meets or equals nor does she point to specific medical evidence to support that she has an impairment that meets or equals an impairment in the Listing. Accordingly, the Court finds Allen has failed to meet her burden of proof at Step Three.

## III. **RFC Assessment**

Allen contends the ALJ failed to accurately assess her RFC because the ALJ improperly discredited her subjective statements, discounted or ignored the findings and opinions of her treating physicians, and rejected lay-witness testimony. Allen also contends the ALJ failed to consider the psychological nature of her pain, the combined affects of her impairments, and the side effects of her medications.

### A. **Credibility Determination**

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of her symptoms. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). *See also Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996).

The ALJ may consider objective medical evidence and the claimant's treatment history as well as the claimant's unexplained failure to seek treatment or to follow a prescribed course of treatment. *Smolen*, 80 F.3d at 1284. The ALJ may also consider the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge about the claimant's functional limitations. *Id*. In addition, the ALJ may employ ordinary techniques of credibility evaluation such as prior inconsistent statements concerning symptoms and statements by the claimant that appear to be less than candid. *Id*. *See also* SSR 96-7p.

Allen testified she has pain all over that radiates from her back. She stated the pain starts in her neck and radiates down her right arm, wrist, and hand. Tr. 433. She testified she suffers pain in the back of her head, which causes headaches two or three times a week and lasts for 20-30 minutes each time. She also stated she has pain in her low back that radiates down the back of her left leg and interferes with her ability to sit and to walk. She gets relief from lying down, taking medication, and applying heat and ice. Tr. 434, 435, 438.

On a good day, she stated she can be up and function for a total of four or five hours. Those hours are divided into several periods. Tr. 442. On a typical bad day, she testified she spends the whole day in bed because it is the only way she

can tolerate the pain.  She stated she has had one or two bad days a week or six or seven bad days a month pretty constantly since November 1995 except for a couple of good months.  Tr. 443-44.

Allen testified she can sit in a chair for about four or five minutes at a time on a good day, but she must lie down between periods of sitting.  She stated she can stand still for two or three minutes or walk for 15-20 minutes.  Tr. 444.  She also can lift a couple of pounds frequently, but any repetitious movement of the arms causes her to have trouble with her neck.  Tr. 445.

Allen receives treatment for depression.  Tr. 437.  She testified she has periods of tearfulness, sometimes twice a month.  Tr. 440.  She stated she has fair concentration and attention except when her pain level goes up, but she typically can focus on a project for no longer than 15-20 minutes at a time.  Tr. 440-41.

Allen testified she has problems with the interactions of her various medications:  Her anti-inflammatory medications bother her stomach, and her stomach medication interferes with her antidepressant, which results in a "vicious cycle" of pain, stomach discomfort, and depression.  Tr. 438.

Allen testified she has not done laundry in years and does not do any household chores. Tr. 446-47. She stated she reads for pleasure and takes community college classes. Tr. 448.

After her accident in November 1995, Allen reports she attempted to return to work by cleaning houses, providing childcare, sewing, and caring for the plants and the pets of people traveling out of town. Tr. 456-58. Allen states she was not able to work often enough or long enough to make a living due to her impairments. Tr. 457.

The ALJ found Allen's testimony and statements about her impairments not totally credible. Tr. 26. The ALJ pointed to inconsistencies between Allen's statements and her reported activities. For example, Allen testified she has not done household chores for years and alleged she has been unable to work since November 1995. She had earnings into 1999, however, from childcare, housekeeping, sewing, and pet care. Tr. 22, 209-10, 251, 280, 287. Although Allen's work, which appears to have been part-time, does not establish she is capable of working full-time on a continuing basis, it demonstrates she was not fully candid when she testified she has not been able to perform household chores or work since November 1995.

In addition to her part-time work, Allen volunteered as a nurse at the Red Cross and went to school three-quarters of the day while raising two children as a single parent. Tr. 22, 287,

300. The ALJ reasonably could conclude that engaging in these activities, even on a part-time basis, is inconsistent with the limitations asserted by Allen, including an inability to sit longer than five minutes, to stand longer than three minutes, or to use her arms for any repetitive movement.

The ALJ next pointed to medical source statements indicating that Allen should be able to do sedentary work. Tr. 22, 23. In January 1998, Jonathan Hoppert, M.D., examined Allen regarding her orthopedic complaints. Tr. 293-94. Dr. Hoppert opined Allen could participate in work that requires primarily sitting without frequent lifting or repetitive bending or stooping, could lift and carry up to ten pounds occasionally, could sit for up to two hours at a time for a total of six to eight hours a day with appropriate rest intervals and the option to change positions, and could stand or walk for one to two hours at a time for a total of six to eight hours a day. Tr. 290.

In August 1998, Allen also was receiving treatment from Gary Sultany, M.D., a rheumatologist. Dr. Sultany opined Allen was able to function at a higher level than she demonstrated. Tr. 298. In October 1998, he stated he did not believe Allen was a good candidate for gainful employment at that time, but he made no findings of specific activities that she could not do. Tr. 377.

In the spring of 2000, Lawrence Franks, M.D., treated Allen for her neck, low back, and the radiating pain to her upper and lower limbs. He did not find any objective neurological deficit. Tr. 393. He opined cervical and lumbar spondylosis would make it difficult for her to perform "any type of physical work stresses [but] she would not be totally disabled to perform sedentary work." Tr. 391.

The ALJ noted psychological evidence that Allen should be able to perform work activities. In May 1998, William Salbador, M.D., performed a mental-function assessment and found Allen "able to follow simple and or complex instructions [and to] deal with the public, coworkers and supervisors" even though these abilities might be somewhat impaired by underlying depression and anxiety. Dr. Salbador did not find Allen had any other limitations. Tr. 289.

In addition, the ALJ noted treating sources consistently instructed Allen to increase her level of activity. In May 1997, Ray Miller, M.D., recommended Allen increase her walking and exercise. Although Dr. Miller believed cleaning houses was too strenuous for Allen, he recommended she engage in activities to promote physical fitness. Tr. 251.

In August 1998, Dr. Sultany "strongly encouraged [Allen] to increase her physical activity." Tr. 298. Dr. Sultany found Allen functioned at a fairly high level despite reporting several

areas of discomfort.  He also reported she did not have any inflammation or arthritic symptoms.  He believed the primary mode of therapy for Allen's condition was physical exercise.  Tr. 301.

The Court finds the ALJ could reasonably conclude Allen's doctors would not recommend increased physical activity if the extreme limitations that Allen set forth in her testimony were medically justified.

The ALJ also found the objective medical evidence reflects Allen has the ability to perform sedentary work activities. Tr. 23.  Before her back surgery, Allen demonstrated clinical evidence of radiculopathy, and MRI scans showed disc herniation in the lumbar spine with a moderately large extruded fragment. Tr. 256, 275.  In March 1997, she had surgery to remove the fragment and relieve compression in the lumbar spine.  Tr. 244.

MRI scans, myelograms, and CT scans in 1998, 1999, and 2000 confirmed Allen has significant degenerative changes in the cervical and lumbosacral regions of the spine, but they also consistently showed the absence of spinal cord or nerve root compression.  Tr. 278, 283-84, 335, 380-81, 389-90, 391, 393.

Although the objective medical evidence supports Allen's claim of back and neck pain and is inconclusive regarding her ability to perform sedentary work activities on a sustained full-time basis, the absence of neurological involvement militates

against Allen's assertions of ongoing radicular symptoms in the legs, hips, wrists, knees, fingers, legs, buttocks, and toes.

Based on this record, the Court finds the ALJ reviewed the entire record, considered proper factors when he made his credibility determination, and reached rational conclusions that are specific and supported by substantial evidence in the record. Accordingly, the Court concludes the ALJ did not err when he rejected Allen's testimony.

### B. **Medical Source Statements**

The ALJ may reject a treating physician's opinion that is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Allen asserts the ALJ failed to consider the findings and opinions of five treating physicians: Ray Miller, M.D.; Ricardo Foggia, M.D.; Robert Crumpacker, M.D.; Kenneth Martin, M.D.; and Eric Long, M.D. Allen also contends the ALJ failed to analyze the medical evidence from Clackamas County Mental Health (CCMH) regarding her psychological impairments. In addition, Allen contends the ALJ failed to articulate reasons for rejecting one sentence of Dr. Hoppert's opinion and one sentence of

Dr. Salbador's opinion.

## 1. **Dr. Miller**

Dr. Miller treated Allen for back pain and performed surgery to repair a herniated disc in March 1997. Tr. 253. Allen did well after surgery. In July 1997 after resuming her housekeeping work, Allen reported intermittent left leg discomfort and back pain. Dr. Miller advised Allen that he "felt that type of work was too strenuous." Tr. 251. He did not, however, suggest Allen would be unable to do less strenuous work.

Dr. Miller indicated Allen should "avoid bending at the waist and lifting." Tr. 251. In his report, it appears Dr. Miller intended his comment as a temporary caution to help Allen recover from a recent exacerbation of back pain following surgery. Dr. Miller did not make any other findings regarding specific functional limitations or restrictions in work-related activities. Dr. Miller's treatment records appear to be entirely consistent with the ALJ's RFC assessment.

On this record, the Court finds the ALJ's RFC assessment reasonably reflected Dr. Miller's opinion together with Dr. Hoppert's opinion, by restricting Allen to "occasional bending" and assessing very low maximum-lifting capabilities. Tr. 24. Accordingly, the Court concludes the ALJ did not reject Dr. Miller's opinion.

## 2. __Dr. Foggia__

Dr. Foggia was Allen's primary-care physician. He diagnosed Allen with degenerative disc disease and referred her to Dr. Miller for surgery. Tr. 262. Dr. Foggia performed a complete physical examination in August 1997. He noted the degenerative disc disease and surgical history, but he did not find any neurological consequences other than numbness on the bottom of Allen's left foot. Tr. 264. Dr. Foggia noted mild obesity and depression controlled with medication. Tr. 265.

Dr. Foggia referred Allen for a neurology evaluation by Dr. Crumpacker, which occurred in March 1998. At that time, Allen reported she was cleaning houses on a part-time basis. Neck compression tests did not produce radicular symptoms in either arm. Allen had normal strength in all extremities. Reflexes were intact and symmetrical except for absent left ankle jerk. Allen also had loss of sensation in areas of the left foot and leg. Tr. 281.

Dr. Foggia did not make any findings regarding Allen's functional limitations, and Dr. Foggia's treatment records and statements appear to be entirely consistent with the ALJ's RFC assessment. Accordingly, the Court finds the ALJ did not reject Dr. Foggia's opinion.

### 3. **Dr. Crumpacker**

Dr. Crumpacker concluded the results of his examination did not support the existence of any problem in the cervical region of Allen's spine. Allen's symptoms, particularly diffuse muscle tenderness, led Dr. Crumpacker to "guess" that Allen probably had fibromyalgia. Tr. 281. Dr. Crumpacker ordered MRI scans of the cervical and lumbar regions of the spine, which showed areas of stenosis without compression of the spinal cord or nerve roots. Tr. 283-84.

Dr. Crumpacker did not make any findings of functional limitations in any work-related activity, and his findings and statements appear to be consistent with the ALJ's RFC assessment. Accordingly, the Court finds the ALJ did not reject Dr. Crumpacker's opinion.

### 4. **Dr. Martin**

Dr. Martin treated Allen from May to October 1998. Tr. 302-12. He monitored Allen's medications, degenerative joint disease, and liver function tests. He made no findings regarding her functional limitations. In June and October 1998, Dr. Martin responded to requests for an opinion on Allen's ability to do work-related activities by deferring to Dr. Sultany. Tr. 302, 305. Thus, the Court finds the ALJ did not reject Dr. Martin's opinion.

## 5. Dr. Long

Dr. Long is a specialist in rehabilitation medicine who treated Allen in April and May 1998.  Tr. 334-36.  He referred Allen for physical therapy and reported the results of an MRI scan showing degenerative changes at multiple levels of the spine.  Tr. 334-35.  He did not make any findings regarding Allen's functional limitations or express an opinion about her ability to perform work-related activities, and his treatment records appear to be consistent with the ALJ's RFC assessment. Thus, the Court finds the ALJ did not reject Dr. Long's opinion.

## 6. CCMH Medical Evidence

Allen began therapy sessions at CCMH in January 1998 due to increased depression that she attributed to chronic pain and the inability to function at home and socially.  Tr. 329-30. The progress records from CCMH show she participated in therapy sessions.  The CCMH records do not include any specific findings by medical providers regarding functional limitations in work-related activities, and they do not contradict the ALJ's RFC assessment.  Thus, the Court finds the ALJ did not reject the opinion of any medical provider at CCMH.

## 7. Dr. Hoppert's Sentence

As noted, Dr. Hoppert made specific findings regarding Allen's ability to perform sedentary work with appropriate limitations.  Tr. 290.  Although the ALJ incorporated in his RFC

assessment all of the limitations Dr. Hoppert identified, Allen,
nonetheless, contends the ALJ erred because the he did not
address Dr. Hoppert's final sentence:  "Fatigue would probably
decrease the patient's ability to function."  Tr. 24, 290.
The Court, however, finds Dr. Hoppert's statement is general
and could apply to any worker regardless of the worker's medical
condition.  Dr. Hoppert did not indicate Allen would be affected
differently by fatigue than any other person, did not identify
specific work settings or activities that would make fatigue more
likely, and did not suggest work restrictions for Allen that
would prevent fatigue.  Without greater specificity,
Dr. Hoppert's statement is not useful in determining Allen's
specific functional limitations.

Accordingly, the Court finds the ALJ's RFC assessment
did not conflict with Dr. Hoppert's statement about fatigue and
reflected reasonable conclusions that can be drawn from
Dr. Hoppert's opinion as a whole.

### 8. **Dr. Salbador's Sentence**

Dr. Salbador also made findings about Allen's ability
to perform basic work activities.  He specifically found Allen
"able to deal with the public, coworkers and supervisors," but he
noted Allen might be somewhat impaired due to her underlying
depression and anxiety.  Tr. 289.  The ALJ's RFC assessment
actually was more restrictive than Dr. Salbador's findings

because the ALJ restricted Allen's RFC to preclude work requiring more than occasional contact with the public.  Tr. 24.  Allen, nonetheless, contends the ALJ should have restricted Allen's RFC to preclude work requiring contact with coworkers and supervisors.

The Court finds the ALJ reasonably could interpret Dr. Salbador's statement to mean that Allen is somewhat impaired but remains capable of dealing with coworkers and supervisors. The ALJ's RFC assessment is consistent with that interpretation.

Accordingly, the Court finds the ALJ did not reject Dr. Salbador's opinion.

In summary, the Court finds the ALJ did not expressly discount the opinion of any of the above medical sources nor did he implicitly reject their findings by reaching an inconsistent RFC assessment.  If the ALJ erred when he failed to state the names of these medical sources or explicitly discuss their treatment records in his written decision, the Court finds such an error was harmless.

### C.  **Lay-Witness Statement**

Allen contends the ALJ erred by failing to articulate reasons for discrediting the lay-witness evidence provided by Allen's mother, Alene Allen.  Family members and others in a position to observe a claimant's symptoms and daily activities are competent to testify as to the claimant's condition. *Dodrill*

*v. Shalala,* 12 F.3d at 918.  Such testimony cannot be disregarded by the ALJ without comment.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  If the ALJ wishes to discount lay-witness testimony, he must give reasons that are germane to the witness. *Id.*

In December 1998, Alene Allen submitted a third-party questionnaire regarding Allen's daily activities.  Tr. 189-91. The questionnaire indicated Allen takes short walks five or six times a week, gardens for 20-30 minutes at a time, and exercises. She also prepares healthful meals and does household chores when necessary with help from her children.  These activities are limited by pain.  She takes naps lasting from 30-90 minutes.  Tr. 189-191.

The ALJ did not mention the questionnaire in his written decision.  The Court, however, does not find anything in the questionnaire that is inconsistent with the ALJ's RFC assessment. All of the activities and limitations Alene Allen described in the questionnaire are in the RFC with the possible exception of Allen's frequent naps.  Neither the questionnaire nor the record as a whole, however, suggests frequent napping is medically necessary.

Accordingly, the Court concludes the ALJ did not discredit the statement of Alene Allen.

**D.  Combined Impairments**

Allen contends the ALJ erred by failing to consider the psychological basis of her pain, the combined effect of all of her impairments, and the side effects of her medications.

The ALJ's decision reflects the ALJ considered the combined effect of all of Allen's impairments, symptoms, and functional limitations as a result of degenerative disc disease, depression, headaches, high blood pressure, thyroid problems, fibromyalgia, pain disorder, and stress without regard to whether any of them considered separately would be disabling.  Tr. 20.

The Court finds the ALJ incorporated into his RFC assessment those functional limitations that were reasonably supported by the evidence.  The ALJ properly considered all of Allen's allegations of pain and the functional limitations caused by the pain regardless whether the pain originated in her  medical condition or her psychological condition.  In addition, by evaluating all evidence of her functional limitations, the ALJ properly considered the combined effect of her impairments and any functional impairments resulting from medications.

Allen does not identify any functional limitations arising from the combination of her impairments or the side effects of her medications that exceed those in the ALJ's assessment.

Accordingly, the Court concludes the ALJ did not err in his assessment of Allen's RFC.

## IV.  **Vocational Evidence**

Allen contends the ALJ erred at Step Five by relying on legally insufficient VE testimony.

At Step Five, the Commissioner must show the claimant can do other work that exists in the national economy.  *Andrews v. Shalala*, 53 F.3d at 1043.  The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all of the limitations of the claimant. *Id.*  The assumptions in the hypothetical question must be supported by substantial evidence in the record.  *Id.*

The Court finds the ALJ elicited testimony from the VE using a hypothetical question that reflected all of the limitations in his RFC assessment of Allen.  Tr. 462.  As noted, the Court has not found error in the ALJ's evaluation of the evidence that supports his RFC assessment.  Even if Allen asserted an alternate, rational interpretation of the evidence, the Court is not free to substitute it for the rational conclusions of the Commissioner.  *See Andrews*, 53 F.3d at 1039-40.

Accordingly, the Court concludes the ALJ properly relied on the VE's testimony in which the VE indicated that significant numbers of jobs exist in the national economy for a person with Allen's RFC, including jobs as an office helper,

inspector/packager of small plastic items and polisher of small items.  Tr. 463.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 12th day of August, 2005.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge